IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GLENDA HENRY**, individually and as parent of
**MATTHEW HENRY-MARSHALL**, a minor,

      Plaintiffs,

vs.                                            No. **CIV 05-945 MCA/RLP**

**NEW MEXICO ACTIVITIES ASSOCIATION**,
ex rel. Gary Tripp, Executive Director,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING PRELIMINARY INJUNCTION

**THIS MATTER** comes before the Court on Plaintiffs' *Petition for Preliminary Injunction, Temporary Restraining Order, and Permanent Injunction* attached to Defendant's *Notice of Removal* [Doc. No. 1], and Plaintiffs' *Motion for Remand or, in the Alternative, for a Temporary Restraining Order and Request for Attorney Fees* [Doc. No. 7] filed on September 7, 2005. Having reviewed the pleadings of record, the relevant law, and otherwise being fully advised in the premises, the Court finds that Plaintiffs' *Petition* in this case satisfies the statutory requirements for subject-matter jurisdiction and meets the equitable standards for granting a preliminary injunction. Therefore, Plaintiff's *Motion for Remand* is denied and Plaintiff's *Petition for Preliminary Injunction* is granted.

## I.     **FINDINGS OF FACT**

1. On or about September 2, 2005, Plaintiffs filed their *Petition for Preliminary Injunction, Temporary Restraining Order, and Permanent Injunction* in the Second Judicial District Court for the County of Bernalillo, State of New Mexico.

2. Plaintiffs' *Petition* prays for immediate injunctive relief requiring Defendant New Mexico Activities Association (NMAA) to rescind its declaration of Plaintiff Matthew Henry-Marshall's ineligibility so that he may participate in athletic programs at Albuquerque High School, including the current and ongoing football season. [Ex. A to Doc. No. 1.]

3. Before Plaintiffs' petition for a temporary restraining order could be heard in state court, Defendant New Mexico Activities Association (NMAA) removed the petition to the United States District Court for the District of New Mexico, where it was entered on the docket and initially assigned to a United States Magistrate Judge on September 6, 2005.

4. This matter was reassigned to me on the afternoon of September 9, 2005, at which time my chambers' staff contacted counsel for the parties and ascertained that Plaintiffs were in the process of filing a motion to remand this matter to state court.

5. In order to afford the parties the opportunity to file and brief the motion to remand, and to allow Defendant the opportunity to file a substantive response to Plaintiffs' petition for injunctive relief, I set a hearing for September 13, 2005, and ordered supplemental briefing on the issue of subject-matter jurisdiction by no later than 12 noon on September 12, 2005.

6. In the course of this supplemental briefing, the parties changed their positions regarding the issue of subject-matter jurisdiction, as Defendant offered to consent to remand if Plaintiffs would stipulate that they would not pursue any federal claims, and Plaintiffs asserted federal-question jurisdiction based on 42 U.S.C. § 1983 and the Equal Protection Clause of the United States Constitution. Plaintiffs also withdrew their motion to remand at the hearing on September 13, 2005.

7. Based on Plaintiffs' assertion of facts supporting one or more colorable federal claims, the Court has jurisdiction over the parties and the subject matter of this action.

8. It clearly appears from the pleadings and the evidence presented at the hearing that Plaintiff Matthew Henry-Marshall will suffer irreparable harm in the form of lost educational opportunities if a preliminary injunction does not issue against Defendant enjoining its rulings with regard to this Plaintiff's ineligibility and its effect on his ability to participate in athletics at Albuquerque High School during the current school year without threat of sanctions based on his alleged transfer status.

9. Plaintiff Glenda Henry is raising her son, Plaintiff Matthew Henry-Marshall, as a single parent, and she provides the sole means of financial support for her son. Plaintiffs do not receive any financial support from the child's father.

10. The threatened harm to Plaintiff Matthew Henry-Marshall outweighs any harm or injury that issuance of a preliminary injunction may cause to Defendant, as such an injunction does not invalidate any of Defendant's written rules on their face but only affects the application of those rules to the facts of Plaintiffs' case.

11.     The issuance of a preliminary injunction would not be contrary to the public interest, as Defendant presented no credible evidence that the transfer at issue here was undertaken for athletic purposes or that Plaintiffs are pursuing this litigation in order to circumvent Defendant's established written rules.

12.     A preliminary injunction should issue immediately, as Defendant was provided with timely notice and appeared at the hearing on Plaintiff's motion, and time is of the essence given that the football season is currently underway with varsity games scheduled each Friday evening for approximately the next eight weeks.

13.     The preliminary injunction should issue without Plaintiff being required to post security, as there is no showing of potential injury to Defendant.

14.     Based upon the pleadings and evidence presented at the hearing in this matter, I find that there is a substantial likelihood that Plaintiffs will prevail on one or more claims under state or federal law, as explained in further detail in the legal analysis below.

**II.     ANALYSIS**

    **A.     Subject Matter Jurisdiction**

"A federal court's power to grant injunctive relief depends on the jurisdiction conferred upon it by federal law."  13 James Wm. Moore, Moore's Federal Practice § 65.07[1], at 65-27 (3d ed. 2005); see James v. United States, 970 F.2d 750, 757 (10th Cir. 1992).  Consequently, this Court is constrained to address Plaintiffs' motion to remand on jurisdictional grounds before it may address the merits of the petition for preliminary injunctive relief.

The procedure for remand specified in 28 U.S.C. § 1447(c) "differentiates between removals that are defective because of lack of subject-matter jurisdiction and removals that are defective for some other reason." Wisconsin Dept. of Corr. v Schacht, 524 U.S. 381, 392 (1998).  In this case, the issue is subject-matter jurisdiction rather than a defect in the removal procedure.  In cases where courts find that a removal is defective because of a lack of subject-matter jurisdiction, they may remand those cases to state court "at any time."  Id.

A federal court's jurisdiction is generally limited to cases that raise a federal question under 28 U.S.C. § 1331 or that meet the requirements for diversity of citizenship stated in 28 U.S.C. § 1332.  Neither party contends that Plaintiff's *Petition* satisfies the prerequisites for diversity jurisdiction under 28 U.S.C. § 1332, as all parties are citizens of the State of New Mexico.  Defendant's *Notice of Removal* asserts, however, that the requirements for federal jurisdiction under 28 U.S.C. § 1331 are satisfied because Plaintiffs' *Petition* alleges a deprivation of rights protected by the United States Constitution that is actionable under federal civil-rights statutes.  In addition, Plaintiffs filed a *Supplemental Memorandum on Subject Matter Jurisdiction* asserting that the facts alleged in the *Petition* allege a violation of Plaintiffs' constitutional rights under the Equal Protection Clause of the Fourteenth Amendment, which is actionable under 42 U.S.C. § 1983.

I conclude that the facts alleged in the *Petition* support a colorable theory that Plaintiff Matthew Henry-Marshall is being deprived of his constitutional rights.  In this regard, I note that the facts alleged in Plaintiffs' *Petition* follow the path of other student-athletes by asserting that the application of Defendant's post open-enrollment transfer rule is premised

5

on an arbitrary classification that lacks any rational basis and is not clearly set forth in any written rule of which Plaintiffs had fair notice.  See, e.g., Davis v. New Mexico Activities Ass'n, No. CIV 00-1232 LH/KBM (D.N.M. Oct. 10, 2000) (unpublished findings of fact and conclusions of law in support of preliminary injunction); Abeyta v. New Mexico Activities Association, No. CIV 02-1377 MCA/DJS (D.N.M. Nov. 1, 2002) (temporary restraining order).  As discussed in further detail below, such allegations may support colorable legal theories arising under the Fourteenth Amendment and 42 U.S.C. § 1983.

It is true that unlike the *Complaint* at issue in Davis, No. CIV 00-1232 JH/KBM, supra, Plaintiff's *Petition* in this case does not expressly identify the federal statutory or constitutional provision under which the claim arises.  Instead, the legal authority cited in Plaintiffs' *Petition* focuses on the general standards for issuing equitable relief in the form of an injunction.  See Key v. Chrysler Motors Corp., 119 N.M. 267, 274, 889 P.2d 875, 882 (Ct. App. 1995), rev'd on other grounds, 1996-NMSC-038, 121 N.M. 764, 918 P.2d 350.  However, the Tenth Circuit has "defined the phrase 'colorable federal claim' generously and liberally" for purposes of establishing subject-matter jurisdiction, Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1240 (10th Cir.2001), and the well-pleaded complaint rule makes Plaintiffs the master of their claims.  See Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1264 n.1 (10th Cir. 2004).  In this case, Plaintiffs' hastily drafted pleading does not manifest an intention to guarantee their action will be heard in state court ""[b]y omitting federal claims from a complaint." Id.

To the extent that Plaintiffs' *Petition* lacks citation to federal law supporting the factual allegations therein, Fed. R. Civ. P. 15(a) permits them to amend their pleading "when justice so requires." In this case, I conclude that no legitimate purpose would be served by remanding this action to state court only to have Plaintiffs amend their *Petition* to include the citations to federal law contained in their supplemental brief, whereupon the matter would once again be eligible for removal to this Court. Such a repetitive removal procedure only serves as a mechanism for unwarranted delay and adds to the irreparable harm that Plaintiff Matthew Henry-Marshall is likely to suffer if he is not afforded an immediate hearing on the merits of his *Petition*. Therefore, I accept Plaintiffs' supplemental brief as an amendment or addendum to their pleading for purposes of adding citations to federal law if necessary to establish subject-matter jurisdiction in this Court.

### B. Preliminary Injunctive Relief

The requirements for issuing preliminary injunctive relief in federal court are well-established. Plaintiffs must show that they will suffer irreparable injury unless the injunction issues; that the threatened injury to the Plaintiffs outweighs the harm the injunction may cause to others; that the injunction, if issued, would not be adverse to the public interest; and that there is a substantial likelihood that the Plaintiffs will succeed on the merits. See Elam Constr., Inc. v. Reg'l Transp. Dist., 129 F.3d 1343, 1346-47 (10th Cir. 1997); 13 James Wm. Moore, Moore's Federal Practice § 65.22[1][a], at 65-41 to 65-42 (3d ed. 2003). The burden is on the Plaintiffs to show that these equitable factors weigh in their favor, see Automated Mktg. Sys, Inc. v. Martin, 467 F.2d 1181, 1183 (10th Cir. 1972), and such a showing must

be "clear and unequivocal," SCFC ILC, Inc. v. VISA USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991).

My findings set forth above support a clear and unequivocal showing that Plaintiffs have met their burden with respect to the first three factors required for preliminary injunctive relief. Additional legal analysis is required, however, to determine whether Plaintiffs are substantially likely to prevail on the merits of one or more of their claims under state or federal law.

To support their position that Plaintiffs make no claim on which they are substantially likely to prevail, Defendants rely on a line of Tenth Circuit authority originating from a 1963 opinion stating that decisions of the Oklahoma High School Athletic Association were not subject to judicial review in federal or state court under the legal framework in existence at that time. See Okla. High Sch. Athletic Ass'n v. Bray, 321 F.2d 269, 273 (10th Cir. 1963), cited in Albach v. Odle, 531 F.2d 983, 984-85 (10th Cir. 1976); cf. Seamons v. Snow, 84 F.3d 1226, 1235 (10th Cir. 1996) (citing Albach, 531 F.2d at 985). According to Defendant, these authorities establish a general principle that "unless clearly defined constitutional principles are at issue, the suits of student-athletes displeased with high school athletic association or NCAA rules do not present substantial federal questions." Wiley v. NCAA, 612 F.2d 473, 477 (10th Cir. 1979).

While I do not doubt that such a general principle applies in the Tenth Circuit, it is equally true that the constitutional principles applicable to public education have evolved and become more clearly defined since the Bray opinion was issued in 1963, and the facts of this

case suggest more than mere "displeasure" with Defendant's rules. The Supreme Court recently stated that "context matters" in evaluating the merits of an equal-protection challenge, and thus the result of such a challenge is not dictated solely by whether the standard of review is strict scrutiny or the rational-basis test. See Grutter v. Bollinger, 539 U.S. 306, 327 (2003). In the context of public education, a classification based on a student's financial condition or place of residence "must be justified by a showing that it furthers some substantial interest." Plyler v. Doe, 457 U.S. 202, 230 (1982). While public education is not a fundamental right, it is nevertheless "distinguishable from other forms of social welfare legislation" because of "the importance of education in maintaining our basic institutions, and the lasting impact of its deprivation on the life of the child." Id. at 221. In addition, courts must be wary of classifications that punish innocent children for the wrongdoing of their parents in this context, because "legislation directing the onus of a parent's misconduct against his children does not comport with fundamental conceptions of justice." Id. at 220. For these reasons, the rational-basis test must be applied with extra care in the context of public education, and I cannot summarily dismiss Plaintiffs' equal-protection challenge on the grounds that a constitutionally protected liberty or property interest is obviously lacking or that there might be some conceivable state interest in maintaining the classification at issue here.

Although it is possible that Plaintiffs may not ultimately prevail on a federal civil-rights claim, I conclude that they have, at a minimum, asserted a colorable federal claim that is legally sufficient to establish this Court's jurisdiction over their petition for preliminary

injunctive relief. Having concluded that this Court has subject-matter jurisdiction based on the presence of a federal question, I may exercise supplemental jurisdiction over any state-law claims asserted in Plaintiffs' *Petition*. See 28 U.S.C. § 1367(a).

Under both federal and state law, it is substantially likely that Defendant's actions in this case are to be treated as those of a state actor or a state administrative or quasi-judicial entity. Even the 1963 opinion cited by Defendant recognizes that: "In a proper case, an individual may seek redress against the members of [a state athletic association] . . . and the trial court had original jurisdiction to explore the question of its ultimate jurisdiction under 42 U.S.C. § 1983." Bray, 321 F.2d at 273.

Further, the Rules of Civil Procedure for the District Courts of the State of New Mexico recognize that "pursuant to the New Mexico Constitution," judicial review of state administrative actions is available by means of a writ of certiorari to the district courts "when there is no statutory right to an appeal or other statutory right of review." Rule 1-075 NMRA 2005. In this regard, the New Mexico Supreme Court has stated that: "A writ of certiorari [under state law] lies when it is shown that an inferior court or tribunal has exceeded its jurisdiction or has proceeded illegally, and no appeal or other mode of review is allowed or provided." Rainaldi v. Public Employees Ret. Bd., 115 N.M. 650, 654, 857 P.2d 761, 765 (1993). In light of these authorities, I conclude that Defendant's declaration of Plaintiff Matthew Henry-Marshall's ineligibility is subject to judicial review in one form or another under state or federal law.

Under New Mexico law, "judicial review of administrative action ... requires a determination whether the administrative decision is arbitrary, unlawful, unreasonable, capricious, or not based on substantial evidence." Regents of Univ. of New Mexico v. Hughes, 114 N.M. 304, 309, 838 P.2d 458, 463 (1992); accord Rule 1-075(Q) NMRA 2005. New Mexico courts generally follows principles elaborated in federal law in defining what actions are "arbitrary and capricious":

> an agency's action is arbitrary and capricious if it provides no rational connection between the facts found and the choices made, or entirely omits consideration of relevant factors or important aspects of the problem at hand. . . . [The agency] may not disregard those facts or issues that prove difficult or inconvenient or refuse to come to grips with the result to which those facts or issues lead, nor may the [agency] select and discuss only that evidence which favors [its] ultimate conclusion or fail to consider an entire line of evidence to the contrary.

Atlixco Coalition v. Maggiore, 1998-NMCA-134, ¶ 24, 125 N.M. 786, 965 p.2d 370 (citations omitted); accord In re Application of Rhino Envt'l Servs., 2005-NMSC-024, ¶ 41, 138 N.M. 133, 117 P.3d 939.

Based on the record available at this preliminary juncture, I conclude that Plaintiffs are substantially likely to prevail on a claim that Defendant's declaration of ineligibility in this case is arbitrary and capricious, and unsupported by substantial evidence. Although I recognize that the rational-basis test employed in the United States Supreme Court's equal-protection jurisprudence is more forgiving in some contexts than the administrative-law standards articulated above, I also conclude there is a substantial likelihood that the

11

classification embedded in Defendant's declaration of ineligibility is so fundamentally flawed in this case as to lack a rational basis under the Equal Protection Clause.

The issue of Plaintiff Matthew Henry-Marshall's eligibility to participate in athletic activities at AHS during the current school year first arose when he appeared at AHS's football practice on August 9, 2005, and asked the coach, Dr. Robert Gary Ness, about joining the school's football team. Dr. Ness advised the student about the need for a physical exam and an "eligibility check." AHS officials subsequently inquired with Defendant's Associate Director, Ms. Sally Marquez, about the student's eligibility. Ms. Marquez responded to this initial inquiry by directing AHS officials to fax a written petition to her because she did not want to handle such petitions telephonically.

In compliance with Defendant's applicable rules and directives, Plaintiffs and AHS officials submitted a petition to Defendant on August 21, 2005, detailing Plaintiffs' financial condition, their *bona fide* residence in AHS's attendance zone, the student's scholastic eligibility, and his reasons for enrolling at AHS instead of Menaul school this year. [Ex. A.] The paperwork included with Plaintiffs' petition also included a form filled out by Menaul School officials indicating that the student was scholastically eligible, had a clean disciplinary record, did not have any outstanding fines, fees, or debts owed to Menaul School, and was not encouraged or recruited for transfer for athletic purposes. [Ex. A.] The Menaul School officials also answered "No" to a preprinted question on the form asking: "Are there additional investigations we should make?" [Ex. A.]

In response to the petition submitted by Plaintiffs and AHS officials, Ms. Marquez contacted the registrar and athletic director at Menaul School by telephone and inquired whether the student would have received financial aid from Menaul School for the current school year. During this telephone call, the registrar or athletic director at Menaul School answered yes to this question and asserted that the student would have been offered a full scholarship. Ms. Marquez did not inquire further or require any documentation from Menaul School to support this assertion. She simply denied the petition and issued a written declaration of the student's ineligibility without reviewing or relying upon any of the paperwork submitted by Plaintiffs regarding their financial condition or *bona fide* residence. According to Ms. Marquez's testimony, such information was irrelevant because her decision rested on the undocumented promise of a full scholarship that Menaul School's registrar or athletic director communicated to her over the telephone.

In her written declaration of Plaintiff Matthew Henry-Marshall's ineligibility, Ms. Marquez stated that her decision was based on her application of NMAA Rules 6.5.2 and 6.3.1(D), which are published in an official handbook available online at http://www.nmact.org. NMAA Rule 6.5.2 states, in relevant part, that: "A transfer student is a Student who chooses to attend a high school outside his/her designated attendance zone or who resides with someone other than Parent(s) after his/her initial open enrollment choice. [Such a transfer student is] **Ineligible** for varsity competition for 180 school days/365 calendar days." Rule 6.3.1(D) states that: "If a Student changes schools after the Open Enrollment Choice, he/she is classified as a transfer student."

Ms. Marquez's written declaration asserts that, under the rules cited above, Plaintiff Matthew Henry-Marshall "made his open enrollment choice" when he enrolled at Menaul School "his freshman year." [Ex. 1 to Doc. 11.]  To support this assertion, Ms. Marquez's declaration reasons that "Matthew had received full financial aid the three years prior at Menaul, and after talking to Menaul School, there is no reason to believe he would not receive the same financial assistance for his senior year," even though "Ms. Henry stated she did not complete or turn in the financial aid paperwork to Menaul for consideration and action," and Ms. Marquez made no effort to contact Plaintiffs to ascertain their response to Menaul School's allegations. [Ex. 1 to Doc. 11.]  Without citing to any particular rule or documented criteria of any kind, Ms. Marquez further states in her written declaration that "financial hardship cannot be a consideration in this particular case." [Ex. 1 to Doc. 11.]

In their *Petition* and in their testimony at the hearing, Plaintiffs pointed out numerous errors in Ms. Marquez's declaration.  First, contrary to this declaration, Plaintiff Matthew Henry-Marshall did not enroll at Menaul School in his ninth-grade year. Rather, he attended West Mesa High School, which was the public school with an attendance zone that covered his *bona fide* residence at that time.  It was not until the following year, in tenth grade, that Plaintiffs accepted an offer of financial aid from Menaul School, which is a private school that charges tuition.  Apparently, Menaul School officials never contacted Defendant about an eligibility determination for the student's transfer from West Mesa to Menaul School, nor did anyone advise Plaintiffs about the need for such a determination.  Ms. Marquez's declaration offers no explanation of why Defendant's transfer rules apply to the student's

14

transfer from Menaul to AHS but not to his earlier transfer from West Mesa to Menaul. Indeed, Ms. Marquez's declaration does not even acknowledge that Plaintiff Matthew Henry-Marshall ever attended West Mesa, nor does it cite to any rule containing objective criteria that specifically apply to transfers from a private school to a public school that are occasioned by a parent's inability to incur the financial risk associated with dependence on financial aid to pay a private school's tuition.

By the time of the student's eleventh-grade year, Plaintiffs moved to a *bona fide* residence that lies within the attendance zone of AHS, which is a public school that does not charge tuition. Although not addressed in Ms. Marquez's declaration of ineligibility, Defendant's written rules provide certain exceptions to NMAA Rule 6.3.1(D)'s classification of students based on their "Open Enrollment Choice." In particular, Rule 6.5.3 states that: "If a family moves to another attendance zone and establishes a new bona fide residence, the Student can elect to remain at his or her current school or enroll at the new school located within the attendance zone of the Student's new bona fide residence. . . . [If] Student enrolls at the new school located within the attendance zone of the Student's new bona fide residence, [then the Student is] **Eligible** immediately once bona fide residence and good standing is established." In addition, NMAA Rule 6.3.2 states that: "If a Student chooses to enroll in the high school within the attendance boundaries of the Student's primary residence and resides with his or her Parent or Legal Guardian, the Student is a bona fide resident of that attendance zone and is eligible immediately for participation." During all

15

relevant times, it is undisputed that Plaintiffs established a *bona fide* residence within the attendance zone of AHS and that Plaintiff Matthew Henry-Marshall is in good standing.

For the reasons stated above, Plaintiff Matthew Henry-Marshall initially enrolled at AHS for his junior year, but Menaul School officials subsequently contacted him on their own initiative and awarded him a full scholarship to continue at Menaul school for the eleventh-grade year. Again, there is no record that Menaul School officials ever contacted Defendant or advised Plaintiffs of the need for an eligibility determination regarding this change in enrollment. In her testimony at the hearing on September 13, 2005, Plaintiff Glenda Henry explained the reasons for her decision to enroll her son at AHS instead of Menaul School at the beginning of his junior year and again during the current school year, as follows: Due to her financial condition, Plaintiff Glenda Henry was concerned about the financial risks associated with enrolling her son at Menaul School because the financial aid that the school awarded did not cover the full cost of enrolling at the school, and in order to make up the difference in cost she had to rely on the charity of a sponsor with no guarantee that the sponsor's aid would continue from year to year. Information about Plaintiffs' financial concerns is also included in the written petition materials that were submitted to Defendant.

When it came time to make an enrollment decision for the student's twelfth-grade year (the current school year in which he is a senior), Plaintiff Glenda Henry had received no information from Menaul School about a sponsor for that year, and so she decided not to fill out the financial-aid paperwork for Menaul School and to enroll her son at AHS instead.

At the hearing on September 13, 2005, Plaintiff Glenda Henry elaborated that her inability to incur the financial risk associated with enrolling at Menaul School without a sponsor this year was prompted by her past dealings with that school, in which decisions about sponsorship were always initiated by the school rather than the parent, and such decisions required approval at the school-board level rather than merely verbal assurances by the school's athletic director. Because Menaul School did not initiate discussions with Plaintiffs about sponsorship for the student's twelfth-grade year, much less provide Plaintiffs with any indication that such aid had been approved at the school-board level, Plaintiff Glenda Henry felt that her only reasonable choice was to enroll her son at AHS this year.

In accordance with Defendant's written rules, Plaintiffs and AHS officials appealed Ms. Marquez's declaration of the student's ineligibility to the NMAA Appeals Committee, which heard the appeal on August 29, 2005. At the appeal hearing, Plaintiffs again stated their financial reasons for the change in enrollment, as explained above, and the Athletic Director of Menaul School again gave verbal assurances, unsupported by any documentation, that the student would have received financial aid during his senior year. [Ex. 2]

The NMAA's Executive Director, Gary Tripp, stated for the first time at the appeals hearing that "financial hardship . . . required a 30% reduction of income" and that "[t]he NMAA hasn't looked at private school tuition increases as a financial hardship." [Ex. 2.] Dr. Tripp did not testify at the hearing before this Court on September 13, 2005; however, Defendant offered the testimony of Ms. Marquez, who explained that she did not base her decision on any "30% reduction of income" rule mentioned in the proceedings before the

17

NMAA Appeals Committee, and she could not explain why Dr. Tripp would have referred to such a rule during the appeal hearing. While Ms. Marquez acknowledged that such a rule might have existed in a past administration, she has never applied such a rule during her administration. In defining what constitutes "hardship" or "financial hardship," the only written, published rule identified by Ms. Marquez is NMAA Rule 6.6.2, which simply identifies "hardship" as one of the grounds for Defendant's eligibility decisions. Defendant has not identified any written, published rule containing objective criteria for determining what constitutes a "hardship" or a "financial hardship," nor has Defendant identified any formal investigative process for determining whether any type of hardship exists.

Defendant also has not identified any written, published rule that prohibits athletic participation by a student who enrolls in the public school of their *bona fide* residence based on a parent's determination that they can no longer afford to pay for the student's private school tuition. Indeed, Defendant's written transfer rules do not expressly address the relevant factors to be considered in the case of transfers between private schools and public schools of a student's *bona fide* residence that are based on private-school tuition rather than athletic purposes.

Given the lack of any specific written rules establishing objective eligibility criteria for the particular fact pattern evident in this case, it is difficult to imagine how Plaintiffs could reasonably have been expected to anticipate that the student's enrollment at AHS in the current school year would have adversely affected his eligibility to participate in athletic programs at AHS during his senior year. At this point, there is no credible evidence that

Plaintiffs' enrollment choice for the current school year is motivated in any way by athletic reasons. Rather, Plaintiff Matthew Henry-Marshall's enrollment at AHS this year is based on his parent's assessment of the financial risks associated with attending a private school such as Menaul, and the fact that AHS is the school of Plaintiffs' *bona fide* residence. For these reasons, I conclude that Plaintiffs are substantially likely to prevail on one or more of their claims that Defendant's declaration of ineligibility is arbitrary and capricious, unsupported by substantial evidence, and lacking any rational basis.

### III.   CONCLUSION

Based on the above findings and legal analysis, I conclude that this Court has jurisdiction over this matter and that equitable grounds exist for granting the preliminary injunctive relief requested in Plaintiffs' motion. The intent of this *Memorandum Opinion and Order* is that Plaintiff Matthew Henry-Marshall be allowed to participate immediately in athletic activities at Albuquerque High School, including the current football season, and that the current controversy over his alleged transfer status pose no obstacle to his continued participation in such activities for so long as this preliminary injunction remains in effect.

**IT IS THEREFORE ORDERED** that, pending further order of this Court, Defendant, its officers, agents, servants, employees, and attorneys, and any persons in active concert or participation with Defendant who receive actual notice of this Order by personal service or otherwise, are hereby **IMMEDIATELY ENJOINED AND RESTRAINED** from:

1.     Declaring or ruling Plaintiff Matthew Henry-Marshall ineligible to participate in athletic activities, including varsity football, on behalf of Albuquerque High School based on his alleged transfer status, or otherwise sanctioning him based on such declaration of ineligibility;

2.     Issuing any declaration or ruling that would result in Albuquerque High School athletic team(s), including the varsity football team, forfeiting any games or events based on the alleged transfer status of Plaintiff Matthew Henry-Marshall, or otherwise sanctioning Albuquerque High School, its athletic team(s), its athletic department, or any of its other activities governed by Defendant, based on the alleged transfer status of Plaintiff Matthew Henry-Marshall.

**IT IS FURTHER ORDERED** that Plaintiff is not required to post bond.

**SO ORDERED**, this 13th day of September, 2005, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge